**FLITTER MILZ, P.C.**
CARY L. FLITTER
ANDREW M. MILZ
JODY T. LÓPEZ-JACOBS
EDWARD M. FLITTER
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
(856) 396-0600

ATTORNEYS FOR PLAINTIFF
BRIAN BARRY AND THE
PUTATIVE CLASS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN BARRY,<br>　　　　　　　Plaintiff,<br>　　vs.<br>NBT BANK, N.A.,<br>SUNGAGE FINANCIAL, LLC,<br>　　　　　　　Defendants. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT** |

### I.　　INTRODUCTION

1.　　This is a consumer protection class action for damages pursuant to New Jersey's Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 et seq.

2.　　This case involves a scheme and conspiracy by a solar finance company and its partner bank to charge consumers undisclosed fees and grossly excessive markups on solar panel loans, without consumers' knowledge or consent.

3.　　Defendants are in the business of financing solar panel systems that are installed on consumers' homes. The standard loan term is 25 years. Depending on the size of the solar panel system, the total sales price of such loans can readily exceed $150,000. Such is the case for Plaintiff Brian Barry, whose total sales price for his solar loan is $162,000.96.

4.　　Defendants structure the transaction to make it virtually impossible for the consumer to meaningfully compare their options with their competitors.

5. Defendants' sales practices are designed to mislead consumers into believing that they will be saving money on electricity costs, yet the contracts are larded with undisclosed markups and fees, adding thousands or sometimes tens of thousands of dollars more than the actual cash price of the solar panel system and related services.

6. Defendants' sales practices are deceptive and misleading because, as a matter of practice and agreement among each other, Defendants: (a) affirmatively misrepresent the APR and cost of credit, as they bury an undisclosed fee into the cost of the loan that they pay to themselves; and (b) affirmatively misrepresent the value of the solar system and related services.

7. Further, Defendants' sales practices are unconscionable because, as a matter of practice and agreement among each other, Defendants charge a grossly excessive markup for the solar system and knowingly obscure and omit the true cost of the various components of the solar system for the purpose of making it more difficult for the consumer to discover the markup or to recover any tax credit.

8. Plaintiff Brian Barry is emblematic of this, as the total sales price of his loan is more than triple the actual value of the solar panel system and related services, even after including a markup for profit.

9. As a result of Defendants' unlawful practices, Plaintiff and the putative class of borrowers who also entered into solar system loans have been damaged because they are unwittingly forced to pay Defendants the undisclosed fee and because the stated cost of the solar panel system and related services is grossly excessive when compared to the actual value of the solar panel system.

10. Plaintiff accordingly sues for damages under the CFA on behalf of himself and the putative class of similarly situated borrowers.

## II. JURISDICTION AND VENUE

11. Jurisdiction arises under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because on information and belief, the amount in controversy exceeds $5,000,000 and more than 100 individuals are members of the putative class.

12. Jurisdiction also arises under 28 U.S.C. § 1332(a) because the named parties are citizens of different states and the amount in controversy exceeds $75,000.

13. Venue is proper because the offending conduct and the underlying transaction took place in this district.

## III. PARTIES

14. Plaintiff Brian Barry is a consumer who resides in New Jersey.

15. Defendant NBT Bank, N.A. ("NBT") is national banking association incorporated in Delaware with a principal place of business located at 66 South Broad Street, Norwich, NY.

16. Defendant Sungage Financial, LLC ("Sungage") is a foreign limited liability company incorporated in Delaware with members who all reside in Massachusetts. Sungage's principal place of business is located at 38 Chauncy St, Floor 6, Boston, MA 02111.

17. Sungage has represented on its website, https://www.sungage.com/homeowners, that "Sungage provides homeowners with consumer-friendly financing options to go solar and save more money," and that it "offer[s] whole project funding, including solar, battery storage, and roof work — **with no fees**," (bolding added) as depicted below:

> **If you're new to solar, we're here to help**
>
> Sungage provides homeowners with consumer-friendly financing options to go solar and save more money.
>
> We offer whole project funding, including solar, battery storage, and roof work — with no fees, no appraisals, and no home equity requirements.

18. Sungage partners with banks like NBT, which offer solar loans through Sungage's electronic loan platform and software.

19. As reflected on its website, https://www.sungage.com/blog/sungages-bank-partnerships, Sungage calls NBT its banking partner, as depicted below:

> February 7, 2025
>
> **Sungage's Bank Partnerships**
>
> **Who's Your Banking Partner? Check Your Loan Documents to Confirm**
>
> Depending on when financing was secured, the banking partner through Sungage could be either Hatch Bank or NBT Bank. Borrowers can log into the Sungage Homeowner portal and check their loan documents.

20. As reflected on its website, https://www.nbtbank.com/Personal/Products-And-Services/Personal-Loans/Solar-Loans/, NBT calls Sungage its "banking partner," as depicted below:

**MANAGE YOUR SOLAR LOAN**

Congratulations on your solar investment with Sungage Financial and welcome to NBT Bank! We are the banking partner of Sungage Financial, looking forward to assisting you with management of your solar loan, providing user-friendly resources and answering your questions.

21. Sungage has represented on its website that NBT "issued most of Sungage loans prior to April 2025" and "now serves 500,000+ customers across the country and operates as the lender and servicer for the Sungage Loan in close coordination with Sungage Financial," as depicted below:



**NBT Bank**: NBT Bank, an independent, community bank based in Norwich, NY issued most of Sungage loans prior to April 2025. Tracing its roots back to 1856, NBT now serves 500,000+ customers across the country and operates as the lender and servicer for the Sungage Loan in close coordination with Sungage Financial.

*If your servicer is NBT Bank*, email solarloanservice@nbtbank.com or call 800-628-2265 Ext 0 for loan questions or concerns.

22. In its most recent 10-K filed with the Securities and Exchange Commission, NBT, through its parent company NBT Bancorp Inc., explained its consumer lending business relationship with Sungage as follows:

> In 2017, the Company partnered with Sungage Financial, LLC to offer financing to consumers for solar ownership with the program tailored for delivery through solar installers. Advances of credit through this business line are to prime borrowers and are subject to the Company's underwriting standards. **Typically, the Company collects fees at origination that are deferred and recognized into interest income over the estimated life of the loan**. Residential solar loans are in a planned-run off status.

NBT Bancorp Inc. Form 10-K, available at https://nbtbancorp.gcs-web.com/static-files/d5d37ae7-0d10-4264-b2b0-bd9616cad4a2 (emphasis added).

23. At all times relevant, Defendants acted jointly, interdependently, and in tandem to arrange for and finance solar loans.

24. At all times relevant, Sungage controlled the terms, marketing, and conditions of financing for solar systems financed through NBT.

25. At all times relevant, Sungage and NBT used the same or virtually identical form loan contract documents in connection with residential solar systems in New Jersey.

## IV. STATEMENT OF CLAIM

26. On or about February 5, 2025, Brian Barry entered into a Home Solar Equipment Loan and Security Agreement ("Loan") with NBT to finance the purchase of a solar system to be installed on his residence. The Loan is for a 25-year term and discloses the "Annual Percentage Rate," "Finance Charge,"[1] and "Amount Financed" as follows:

---

[1] The "Finance Charge" is an industry term that refers to "the cost of consumer credit as a dollar amount," and it "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit," 12 C.F.R. § 1026.1(a), such as loan fees, 12 C.F.R. § 1026.1(b)(3), and charges by third parties. 12 C.F.R. § 1026.1(a)(1).

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**
**ITEMIZATION OF AMOUNT FINANCED**

| Amount Given to you Directly: | N/A | Amount Paid on your Account: | N/A |
|---|---|---|---|
| Amount Paid to Others on your Behalf: | | | |
| $101,622.27 to Team Sunshine | | on your behalf by NBT Bank, N.A. | |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. 3.990% | FINANCE CHARGE The dollar amount the credit will cost you. $61,178.69 | Amount Financed The amount of credit provided to you or on your behalf $101,622.27 | Total of Payments The amount you will have paid after making all payments as scheduled. $162,800.96 |
|---|---|---|---|

Monthly payment schedule:  (e) means an estimate

| Number of Payments: | Amount of payments: | (e) When Payments are Due: |
|---|---|---|
| 17 | $385.69 | Monthly, starting 60 days after First Disbursement |
| 282 | $552.10 | Monthly, starting 19 months after First Disbursement |
| 1 | $552.03 | At Maturity |

27. As depicted, the Loan reflects that the "Amount Financed" of $101,622.27 will be paid to "Team Sunshine"—the installer.

28. The "Home Solar Equipment Loan Approval Notice" associated with Loan likewise reflects a "Solar System" cost of $101,622.27.

29. Defendants intentionally did not provide any itemization of the constituent parts of the $101,622.27, as Defendants' goal was to obscure the value of the solar system and related services. Defendants' failure to provide such an itemization makes it less likely that consumers will be able to claim any federal tax credit, which can be sought only for certain qualified property costs.

30. Defendants' affirmative representation that the "Solar System" costs $101,622.27 is deceptive and misleading because the value of the solar system and related services, even after

7

including a markup for profits, is approximately $55,000, reflecting an additional markup of a staggering $46,000 (hereinafter referred to as the "Additional Markup").

31. Defendants' affirmative representations described previously are deceptive and misleading because when NBT originated the Loan, it collected a fee for an undisclosed amount (hereinafter referred to as the "Unauthorized Hidden Fee") that it knowingly hid from Plaintiff and the putative class, and Defendants did not actually pay the installer the full $101,622.27, as they pocketed the Unauthorized Hidden Fee for themselves.

32. Defendants conceal the Additional Markup and Unauthorized Hidden Fee to make it less likely that consumers will be able to discover them when deciding whether to proceed with solar financing.

33. Defendants' practice of charging the undisclosed Additional Markup is deceptive and unconscionable because it is grossly excessive in relation to the solar panel system, which has provided no meaningful benefit to Barry and is not expected to result in any cost savings for Barry.

34. Defendants' practice of charging the Unauthorized Hidden Fee as part of the Amount Financed is deceptive and unconscionable because it had no basis to charge the Unauthorized Hidden Fee.

35. Defendants, in the Loan, misrepresented the "Finance Charge" as $61,178.69, which is understated because that amount does not include the Unauthorized Hidden Fee.

36. Defendants, in the Loan, misrepresented the "Annual Percentage Rate" as 3.99%, which is understated because it does not account for the Unauthorized Hidden Fee that Defendants buried in the Amount Financed instead of identifying it as part of the Finance Charge.

37. Had Defendants disclosed the Additional Markup and/or the Unauthorized Hidden Fee, Barry would not have agreed to the Loan.

38. As a result of Defendants' unlawful conduct described above, Plaintiff suffered ascertainable losses, which includes the Loan obligation, the Additional Markup, and the Unauthorized Hidden Fee.

## V. CLASS ALLEGATIONS

39. Barry brings this class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure based on Defendants' agreed-upon practices in violation of the CFA. Barry seeks to represent the following class:

> All persons who, within the six-year period prior to filing of the Complaint, entered into a solar panel system loan with NBT Bank, N.A. through Sungage Financial, LLC's platform in connection with a New Jersey residence where such loan shows an annual percentage rate greater than 0%.

40. The class is so numerous that joinder of all members is impracticable. Although the number of class members is known only to Defendants, NBT represents that it entered into hundreds of thousands of Sungage loans. Accordingly, Plaintiff estimates that the class consists of thousands of individuals.

41. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The principal questions are:

> (a) whether Defendants conspired to obscure the value of the solar panel systems and related services in connection with the loan transactions;
>
> (b) whether Defendants conspired to charge consumers the Unauthorized Hidden Fee in connection with the loan transactions;
>
> (c) whether Defendants violated the CFA by charging consumers the Unauthorized Hidden Fee in connection with the loan transactions;

      (d) whether Defendants conspired to charge consumer the Additional Markup in connection with the loan transactions;

      (e) whether Defendants violated the CFA by charging consumers the Additional Markup in connection with the loan transactions; and,

      (f) whether Defendants' conduct caused an ascertainable loss to Plaintiff and the class members.

42. Barry's claims are typical of the claims of the class, which all arise from Defendants' uniform sales practices and are based on the same legal theories. All class members were individuals who were charged the Undisclosed Hidden Fee and the Additional Markup as part of their solar loan transaction.

43. Barry will fairly and adequately protect the interests of the class. Barry is committed to vigorously litigating this matter on behalf of the class and has retained counsel experienced in consumer protection matters and class action practice.

44. Courts regularly find that Flitter Milz has the requisite experience and skill in prosecuting consumer class actions. *See, e.g.*, *Norman v. Trans Union, LLC*, U.S.D.C. E. D. Pa. No. 18-cv-05225-GAM (noting at July 21, 2025 final approval hearing that Flitter Milz, PC "certainly has the experience and the ability and a really a national reputation based upon their longtime presence in this field"); *Lantych v. Flagship Resort Development Corp.*, ATL-L-000744-23 (N.J. Super. July 23, 2024) (certified on contest; "[Flitter Milz, PC] possess considerable experience in the litigation of class action lawsuits."); *Dashiell v. Best Buy Imports Inc.*, May Term 2022, No. 00968 (Pa. CCP Phila. Co. June 6, 2024) (certified on contest; "[Flitter Milz] attorneys [are] well-qualified in the field and specializing in claims on behalf of consumers").

45. Neither Barry nor his counsel have any interest that might cause them not to vigorously pursue these claims.

46. Questions of law and fact common to the class members predominate over questions affecting only individual class members.

47. All class members entered into the same form loan agreement that included the Undisclosed Hidden Fee and the Additional Markup, as Defendants intended. All class members suffered the same ascertainable loss in the form of the Undisclosed Hidden Fee and the Additional Markup.

48. Defendants' conduct described previously stems from uniform, standard, and agreed-upon policies and practices, resulting in common violations of the CFA.

49. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. A class proceeding obviates the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Concentrating all of the New Jersey class members' claims in a single forum here in New Jersey serves the interests of justice and judicial economy.

50. Management of this action as a class action will not present any undue difficulties because the identity of class members may be ascertained from a ministerial inspection of Defendants' records.

51. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members, which would as a practical matter be dispositive

of the interests of class members who are not parties to the adjudications or substantially impair their ability to protect their rights.

## COUNT I
## New Jersey Consumer Fraud Act

52. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

53. Defendants and their sales and business practices are subject to the CFA.

54. The CFA, at N.J.S.A. 56:8-2, prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

55. Defendants' unconscionable and deceptive conduct and misrepresentations described previously violate N.J.S.A. 56:8-2 and constitute unconscionable commercial practices.

56. As a result of Defendants' violations of the CFA, Plaintiff and the putative class have suffered ascertainable losses, which includes the loan obligation, the Undisclosed Hidden Fee, and the Additional Markup.

**WHEREFORE**, Plaintiff Brian Barry, on behalf of himself and the putative class, demands judgment in his favor against Defendants for:

   a. Actual damages;

   b. Treble damages under the Consumer Fraud Act at N.J.S.A. 56:8-19;

   c. Reasonable attorneys' fees and costs;

   d. Interest; and

   e. Any other relief the Court deems just and proper.

## VI. CERTIFICATION PURSUANT TO N.J.S.A. 56-8:20

The undersigned hereby certifies that a copy of the Complaint was sent via first class United States Mail, postage prepaid, to:

Office of the Attorney General
P.O. Box 112
Trenton, NJ 08625-0112

Respectfully submitted:

Date: August 18, 2025

/s/Jody T. López-Jacobs
CARY L. FLITTER
ANDREW M. MILZ
JODY T. LÓPEZ-JACOBS
EDWARD M. FLITTER
**FLITTER MILZ, P.C.**
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
(856) 396-0600

*Attorneys for Plaintiff
and the Putative Class*